*Minutes of Superior Court, letter F. p. 470.*

*April,* 1808.

*Ex parte* PAUL GRIMBALL.

### IN EQUITY.

THIS was a bill in equity, stating, that several judgments had been obtained at law, against the complainant, *Paul Grimball*, for nearly 5000 dollars, while he had a judgment in his favour for 8000 dollars, suspended by an appeal ; that executions had been issued against him, and a sale threatened, which, if it took place, would prove ruinous to the complainant, inasmuch as nearly double the property would be sacrificed now, at a forced sale, which it would have required only four months ago, to pay these judgments ; and praying an injunction to delay any farther proceedings at law for the present.

The case was argued on the 7th inst. *Leake*, the complainant's solicitor, stated, that the bill sought relief on two grounds.

1. Equity will relieve on grounds of public utility or convenience ; because a national measure (the embargo acts) ought not to produce individual ruin, when this court can prevent it.

2. Equity ought to relieve, from the peculiar situation of the party ; because the plaintiff was deprived at law of a rightful advantage.

*Lawson* and *Stites,* for plaintiffs in execution, opposed the injunction, principally on the ground, that it could not issue from the apprehensions of the party ; that no levy and sale was yet ordered ; and that the complainant ought to give security before the relief prayed for could be obtained.

GEORGIA,
Chatham Co.
APRIL, 1808.

Ex parte
Grimball.

*Charlton*, Judge.

The complainant in this bill states, that executions have been issued against his property, and a levy and sale menaced ; that if a sale is made by the sheriff, at this time, when the pecuniary embarrassments, occasioned by the embargo acts, are so general and distressing, it will involve him in ruin, as no price, or no fair price can be obtained for his property, and that he has no other means of paying his debts.

Upon these grounds he applies to the chancery side of this court for a writ of injunction, to restrain a sale under these executions. I shall not bottom a decision upon the peculiar circumstances of *this case* only, or as a peculiar case involving such features of hardships and oppression, as renders necessary the interposition of this branch of the court. On the contrary, I shall view this as a case in which *all our citizens* are interested, and as calculated to establish a precedent for the general benefit.

I ask the question, Is it not against *equity and conscience ?* is it not in the highest degree oppressive, to compel the sheriff to obey the mandate of a writ of execution, when the facts are before the whole public, that the sale of produce, in its usual course of traffic, is suspended, or bought up by monied men from the necessitous planter, for a song ? From the planter who must *sacrifice* his crops to prevent a *greater sacrifice ;* who must sell to obtain provisions (if a cotton planter) for his negroes, and necessaries for his family ; who must sell for this song, to prevent his negroes (a more valuable property, and upon whose uninterrupted labour and increase the future support of himself and children depend) being knocked off under the hammer of the Sheriff, at a price far less than half their cash value. Is this picture overcharged ? is it not rather a correct delineation of the distresses of the agricultural interest at this moment ? If it is, then relief ought, somewhere, to be found.

It has been, and is at this time, a subject of sufficient magnitude to require one of the extraordinary meetings of this legislature, which the constitution authorises. But until a

legislative suspension of sales is given to the people, cannot relief be afforded by this court?

GEORGIA,
Chatham Co.
APRIL, 1808.

Ex parte
Grimball.

I have given to the power with which the law and the constitution have invested me, their full deliberation; and though I do not possess all the powers of a lord chancellor, because by our local system, the interposition of a jury is required in equity cases, yet that system cannot, and does not interfere with these matters in chancery, which in their nature must be exclusively referred to the discretion of the court. Of this nature I consider the application for the writs of injunction.

An injunction *is a prohibitory writ, restraining a person from committing or doing a thing which appears to be against equity and conscience.*

This is the simple definition given by one of the elementary compilers, and it is sufficiently comprehensive for me to adopt it.

The principal use made of this writ is, to restrain some rigorous proceedings at law.

I shall then consider whether a sale by the sheriff, at this crisis of our national affairs, big with calamities, as I have described, to the agricultural interest, should be restrained as a rigorous proceeding at law, and as a proceeding against equity and conscience.

1. Is it a rigorous proceeding in law? An execution is the last stage of our common law proceedings. It places the person, or the property of the defendant, at the mercy of the judgment of the creditor, who may make his election. I am speaking of the execution, of which nothing can be alleged in chancery against its parent judgment. Of this nature are the executions before us, and they assume the appellation of rigorous proceedings, because there is no remedy at law; and unless a remedy is found somewhere, *ruin* stares the defendant in the face; a ruin not brought on himself by want of probity, or of property in his possession exceeding, probably ten times, at a cash valuation, the amount contained in the executions, but a ruin brought down on him by a *necessary measure* of the national legislature and govern-

GEORGIA,
Chatham Co.
APRIL, 1808.

Ex parte
Grimball.

ment, which unfortunately obstructed the channels through which he had been accustomed to pay his debts, probably with punctuality.

2. Is it a proceeding against equity and conscience ?

This is the broad basis of the writ of injunction.

It is admitted by both sides, that no remedy can be had at common law. When we resort to law, it is expected that *precedents* will have their full weight of authority; and though precedents may militate with that justice which the peculiar circumstances of a particular case may require, yet, for the sake of general and uniform rules, a judge will seldom deviate from an established and settled principle to accommodate the circumstances of one case, however strong the reasons may be to exempt it from the operation of precedent.

In the case of *Doe*, 5th Pott, 2 Douglass, 120, lord *Mansfield* is reported to have said, " the absurdity of lord *Lincoln's* case is shocking ; however it is now law." This observation of his lordship may be selected as the most strongly illustrative of the authority, given by common law judges, to precedent.

A court of equity is not so trammeled. It is governed by uniform rules of evidence, and though a respect is evinced in that jurisdiction for precedents, yet they are seldom permitted to stand in the way of the particular circumstances of each case.

A lord chancellor of Great Britain is almost as omnipotent as parliament. Give him but a strong hold on an equitable principle, and he will be sure to substitute the *intention* of an act of parliament for its *letter ;* he will push aside precedent for abstract honesty. What are the many cases in the equity reports, on the statutes of frauds and perjuries, but indirect repeals of the plain and literal requisites of that all-important statute ?

It is only necessary to advert to the nature of law and equity to account for the latitude of power given to the latter.

The *law* is stubborn and unbending. It marks out for

itself a course from which no fascinations can illure, no ob-
stacles impede.

It neither looks to the right nor to the left.   It neither re-
lents nor forgives.   It issues its mandates, and will be obey-
ed ; it takes into view no consequences.

" *Fiat justitia*" is its maxim, whether contemplating its
operation upon a nation, or upon an individual.

We perceive at once, that such should be the nature and
effects of law ; they necessarily result from that indiscrimi-
nating and eternal justice, upon which the common law is
founded.

Our ancestors felt, as we have felt after them, the neces-
sity of some tribunal, armed with the attribute of alleviating
the inexorableness of the law.   This tribunal is called a
court of equity, whose decisions are guided by the particu-
lar circumstances of the case.

This court of equity lends mercy to the law, and steps in
as a kind mediator between rigid justice, as established by
the artificial institutions of society, and that justice which
traces its origin to the laws of nature, and of God.

In cases like these before me, the law places every thing at
your disposal.   It holds out to you the means of rioting upon
the spoils of your neighbour, your debtor, or the commu-
nity.

The nation, in order to redress itself for outrages on its
sacred rights, imposes distresses on its own citizens.   These
distresses are the deprivation of those means which hereto-
fore poured wealth or competence into the lap of the plan-
ter.

His ostensible wealth is, however, now the same.   He
shows you his cotton, his rice, and his negroes.   He proves
to you that his property has even greatly accumulated since
he engaged to pay your debt ; but to pay that debt *now* he
tells you that he is unable, unless a sale is directed by the
sheriff, the consequences of which would be a payment to
you of fourfold ; for a sale of his property now, would
amount to diminution of quadruple its intrinsic and just

GEORGIA,
Chatham Co.
APRIL, 1808.

Ex parte
Grimball.

value, and in that ratio less than it would have sold for at market previous to the embargo.

How immense, and at the same time how unrighteous, are the advantages which the creditor derives, if he himself become the purchaser, and pay with his judgment ! How much more unrighteous and against conscience is a purchase under these circumstances by a capitalist, who, with his ready money, speculates upon the misery and the ruin of the unfortunate debtor !

Time has not been allowed me to search for apposite cases in the books.  I do not recollect, at this moment, any cases reported in the *English* authorities involving the principles of the cases before us.

I shall, therefore, bottom my decision upon the abstract grounds, that cases of this description involve hardship and oppression ; that they are against equity and conscience ; that they are promotive of injury to the public ; that they enable monied men to accumulate usurious wealth ; and that they tend to convert a *just* and *salutary* measure of the government, into an engine of political disaffection, through the medium of distressed and persecuted debtors.

Let the writ of injunction therefore issue, to stay sales upon these executions, until the first day of September next, the claimant depositing with the sheriff, when required to meet the day of sale, *sufficient property*, the valuation of which to be ascertained by the price at market three months preceding the embargo act.

*Leake*, in support of motion for injunction.

*Lawson* and *Stiles*, against it.